UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | CRIMINAL ACTION |
| v. | ) ) | NO. 4:19-40010-TSH |
| CHRISTOPHER BROWN,  Defendant. | ) ) ) ) |  |

**ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO SUPPRESS (Docket No. 55)**

**November 20, 2019**

**HILLMAN, D.J.**

The United States of America (the "Government") charged Christopher Brown ("Defendant") with being a felon in possession of firearm and ammunition. (Docket No. 1). Defendant moves to suppress the evidence of a firearm. (Docket No. 55). For the following reasons, the Court *__denies__* the motion.

**Background**

On November 25, 2018, Worcester Police Gang Unit Officer Trevis Coleman ("Officer Coleman") received a call from another officer requesting assistance with a traffic stop. (Docket No. 1-1 at 2). On his way to the traffic stop, Officer Coleman witnessed the Defendant exit an SUV parked in front of the Royal Worcester Apartments on Wyman Street. (Docket No. 1-1 at 2). Officer Coleman recognized the Defendant and knew him to be a convicted felon. (Docket No. 1-1 at 2). Officer Coleman observed what appeared to be the butt of a firearm protruding from the Defendant's waistband. (Docket No. 1-1 at 2). Because Officer Coleman knew the

Defendant could not legally carry a gun, he stopped his cruiser and approached. (Docket No. 1-1 at 2).

Officer Coleman instructed the Defendant to put his hands behind his back and attempted to handcuff him. (Docket No. 1-1 at 2). The Defendant resisted. (Docket No. 1-1 at 2). Officer Coleman grabbed the Defendant's torso and felt around his waist for a firearm. (Docket No. 1-1 at 2). The Defendant broke free and tried to enter the Royal Worcester Apartments. (Docket No. 1-1 at 2). Officer Coleman prevented the Defendant from entering the building and detained him. (Docket No. 1-1 at 2). Backup officers arrived, and once they had secured the Defendant, Officer Coleman returned to the area of Wyman Street where he had initially stopped the Defendant. (Docket No. 1-1 at 3). He retrieved a black firearm containing four rounds of ammunition. (Docket No. 1-1 at 3).

The Government charged Defendant with being a felon in possession of firearm and ammunition. (Docket No. 1). Defendant moved to suppress on September 26, 2019. (Docket No. 55).

## Discussion

*1. Lawfulness of the Stop*

Defendant argues that the Court should suppress evidence of the firearm because the Government obtained it during an unlawful stop. The Court disagrees.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22.

Specifically, an officer may stop an individual if the officer has "reasonable suspicion that the person is or has been engaged in criminal activity." *United States v. Brake*, 666 F.3d 800, 804 (1st Cir. 2011). Reasonable suspicion "must be premised upon 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Pontoo*, 666 F.3d 20, 27–28 (1st Cir. 2011) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

Here, Officer Coleman had a lawful basis to stop the Defendant. While driving by the Defendant, Officer Coleman observed what, based on his five years serving on the police force and his many firearm arrests, he believed to be the butt of a firearm in the Defendant's waistband. Officer Coleman also recognized the Defendant and knew that, as a convicted felon, the Defendant could not lawfully possess any firearm. Officer Coleman thus had a reasonable suspicion that Defendant was engaging in criminal activity, i.e., possessing a firearm as a convicted felon. *See United States v. Hart*, 334 F. Supp. 2d 5, 11 (D. Mass. 2003).

The stop, moreover, remained lawful throughout the encounter. "Where an investigatory stop is justified at its inception, it will generally not morph into a de facto arrest as long as 'the actions undertaken by the officer[s] following the stop were reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officer[s] during the stop.'" *United States v. Chaney*, 647 F.3d 401, 409 (1st Cir. 2011) (quoting *United States v. Trueber*, 238 F.3d 79, 92 (1st Cir. 2001)). Officer Coleman had a reasonable suspicion that the Defendant was armed and dangerous, and his initial attempt to handcuff the Defendant was a reasonable measure designed to neutralize risk and protect himself from harm. And while Officer Coleman's actions escalated during the encounter, the Defendant's resistance and efforts to break free justified that escalation.

To the extent that Defendant argues that suppression is nonetheless warranted because the criminal nature of the firearm was not apparent under the plain view doctrine, the Court disagrees. Even assuming *arguendo* that Officer Coleman lacked probable cause as to the criminal nature of the firearm—which this Court doubts—the plain view doctrine is inapplicable in this case. The Government asserts that Officer Coleman lawfully obtained the evidence pursuant to a *Terry* stop predicated on a reasonable suspicion that Defendant was engaging in criminal activity. The Government does not argue that seizure of the firearm was permissible because it was in plain view.

## **Conclusion**

For the reasons above, the Court ***denies*** Defendant's motion to suppress. (Docket No. 55).

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**